May it please the court. Good morning, your honors. My name is Paolo Lima. I'm here on behalf of the appellant, the plaintiff below, Irina Tesoriero. We're here on a maritime negligence case where the trial court granted summary judgment to the defendant. As we've pointed out in our brief, we've raised three different arguments, each of which is an independent basis for this court to reverse and remand for further proceedings. I'm going to start today, though, by discussing the spoliation of evidence issue. The district court found that plaintiff was not entitled to an adverse presumption of negligence because, according to the district court, the plaintiff had not shown that Carnival spoliated evidence. Let me ask you a question about that, if you don't mind. So, it looked to me when I read through the report and recommendation that the magistrate judge said that there might be some issues of credibility here and that maybe it would be good to have an evidentiary hearing. And the district court did not directly address that, but just adopted the magistrate judge's report and recommendation. And it seems to me that if there is an issue of credibility about that, then there is a material issue of fact concerning notice. Because if the trier of fact does not believe the Carnival witnesses, then it seems as though the plaintiff might be entitled to an instruction on notice and a presumption of notice. But if the trier of fact does believe the Carnival witnesses, then the plaintiff would not be entitled to concerns notice. It seems like there might be a material issue of fact about that. I just wondered if you could address that for me. What are your thoughts on that? I agree that there is certainly a material issue of fact as to notice, which of course I guess my question, and I'm sorry to interrupt, but it's a little bit more specific, which is if there is a credibility question about spoliation, does that then equal a material issue of fact on the notice question? I think it does, although I'm going to sort of question your Honor's premise just a little bit. The credibility determination or the comment about credibility that I recall was not necessarily in the spoliation analysis, but in the district court or the magistrate's res ipsa analysis, where when the district court and the magistrate were analyzing whether or not there was a reasonable alternative explanation for the collapsing chair, one of the alternatives that the trial court came up with was perhaps it was the plaintiff or the plaintiff's family that damaged the chair. And the magistrate then went on to say, but a jury may find, let me back up a step, the response to that was there's an affidavit in the record and there's testimony from both the plaintiff and her husband that no, none of them in the family had touched the chair prior to the incident. And the magistrate then dealt with that by saying, well, a reasonable jury could have just disregarded that, finding that to be not credible. And obviously there's tons of case law, including from the United States Supreme Court saying that credibility determinations and the weighing of evidence are not things that should be taking place at the summary judgment stage. And that really goes to the heart of our res ipsa argument that the plaintiff should have been entitled to an adverse presumption, or rather an inference of negligence, because the plaintiff has shown that she's entitled to a res ipsa instruction. And under the various district court decisions that we cited below, when there's a res ipsa, a plaintiff is entitled to a res ipsa presumption without regard to notice. There's no need to show notice if the plaintiff is proceeding under res ipsa. Don't you, don't you have to have a duty before res ipsa can apply? You do need to have a duty to a duty of reasonable care. Yes, your honor. And how do you get to, how do you get to duty without notice in the first place? We see notice as an additional element on top of, of the duty of reasonable care. In other words, you need, you have a duty of reasonable care because carnival is a common carrier that has agreed to take the plaintiff and along with thousands of other passengers on these voyages, it has a duty to exercise reasonable care toward the plaintiff and all other passengers. So in this circuit, as this court is well aware, every opinion in maritime negligence cites this, you need to show the traditional elements of negligence of duty, breach causation and damages as well as a notice. And that is that the defendant knew or should have known of the danger of the dangerous condition. And where the res ipsa comes in is that because there is, this is one of the mishaps that is of a type that ordinarily does not occur in the absence of an inference of negligence. Then the burden shifts to the defendant to rebut that presumption. I'm going to back you up because I think, I'm curious how you respond to the statement we made in Keefe versus Bahama Cruise Line, which is ordinary, a shipowner owes passengers a duty of quote, ordinary reasonable care under the circumstances, a standard which requires as a prerequisite to imposing liability that the carrier have had actual or constructive notice of the risk-creating condition. Doesn't that suggest that notice, rather than being a separate element, is actually a part of the duty that the shipowner owes or the carrier  It does, Your Honor, but our position here is that the notice element has been satisfied independently, both through the spoliation adverse inference as well as through traditional constructive notice, which is the first argument that we've put forth in our brief. And that argument, just to sort of play that out a little bit, is that Carnival was on notice because if you look at the evidence, Carnival's housekeeping manager testified that as part of their everyday inspections, they come into the passenger cabins, they not only visually inspect it, but they check it for quote, structural soundness, and I believe the quote is they will touch the furniture. And so if Carnival had been actually performing the inspections that it says it was performing, a reasonable jury could find that it would have detected that the chair was in what we've called in our brief sort of a hair triggers condition because the testimony was very clear that the moment she sat down into that chair, it collapsed instantaneously. So it's true. You obviously have argued that Carnival has notice, but I had understood your race ipsa argument to be that if race ipsa applies, you don't have to show notice. Have I misunderstood something about your argument there? No, Your Honor, our race ipsa argument does make that argument and it's based on three district court cases that have held that Milan versus Celebration, Morehart versus Carnival and O'Brien versus NCL Bahamas, each in this district. There are district court cases that go the other way too, right? Which is why I think, at least in my view, we need to decide that here. Well, none of the district courts, the cases that go the other way is on point and I would direct the court to the discussion, Judge Williams's discussion in Milan versus Celebration where she sort of goes through each of the district court cases that reportedly go the other way and distinguishes them on their facts. And in fact, the magistrate judge in this case below actually went through a pretty good analysis of why, notwithstanding just the other district court holdings, why as a policy matter, he feels that it's necessary to, that a plaintiff does not need to show notice independently where they're proceeding under the res ipsa analysis. And the reason for that is that there's tons of case law from the Supreme Court on down, but one of the motivating factors of developing maritime law is for consistency with land-based law. And the magistrate made clear that there were virtually every jurisdiction in the United States has adopted res ipsa loquitur and that for purposes of consistency, simplicity, and ease of applicability, it would be consistent with all of those to import the res ipsa argument into maritime law. And by the way, there's still, well, see that's the second question, right? I think one question is does res ipsa apply in maritime law? The other question is, assuming that it does or concluding that it does, does that eliminate the notice requirement? Well, and this court- Because they're two separate questions as I see it. They are two separate questions. And this court most recently looked at it in Sutton versus Royal Caribbean, but expressly left open the question of whether or not the notice requirement does apply. I'll note that the question of whether res ipsa applies in maritime law I think is well settled ever since 1945 when the Supreme Court applied it in Johnson versus United States, which is a maritime case. And then this court in 1986 decision United States versus BACON also applied res ipsa in a maritime context. What do you make of the idea that BACON is authority for eliminating the notice requirement? I frankly have never, have not heard that. I don't see the rationale for doing so. I think it doesn't go there. It doesn't address it. And as this court noted in Sutton, it's an open question in the 11th circuit. But if we go to the spoliation issue, which really kind of renders moot the res ipsa or the constructive notice issues, I mean, there's no question here that Carnival discarded or destroyed the chair within moments of Mrs. Tesoriero falling and injuring herself. And the district court's reasoning for not granting the spoliation adverse inference was that Carnival did not reasonably anticipate litigation. Now, that finding is clearly erroneous. It is an abuse of discretion to base its denial summary judgment on that because we know that Carnival expressly admitted that it anticipated litigation. I mean, we have a request for admission that asked admit that the defendant immediately after the incident was reported anticipated litigation arising from the accident. Response, admitted. Not admitted with reservations, with qualifications, no explanation, admitted. Even if you put that aside, you could look at the testimony of Monica Petisco, who is Carnival's corporate representative, and she very clearly admitted as well that under these circumstances where the passenger was asked to write a passenger injury report, is that the type of situation where Carnival would anticipate litigation? The answer was yes. And so there really is no basis for the district court's finding, which again was the very reason why it declined to give the spoliation adverse inference. And again, we've also put forth extensive argument and citation to authority in our brief about the bad faith here. Carnival's read that they hung their hat on below was that, well, this was it was destroyed in the reasonable course of operations. But let's be clear. This was not a situation where the steward came around to the cabin in the ordinary course of cleaning, noticed a broken chair in the corner and decided, let me get this out of the cabin. The, you know, the record really reveals a pretty shocking sequence of circumstances. Mr. Tesoriero calls the front desk, reports, I think my wife has broken her arm. The chair broke underneath her. Could you send some medical assistance? What date was that? That was that was within minutes of the accident happening, which was on June 26th of 2015. So minutes later, they call the front desk. Please send help. Instead of sending help, Carnival dispatches a steward who comes, takes the chair away. And while the steward is there, the plaintiffs again repeat, we think that she's broken her arm. The chair broke. Obviously, that's why you're here. Is help coming? No help is coming. They then proceed to decide that they're on their own. They go down to the medical clinic where, again, they inform the doctor that they think she may have a broken arm and that the chair is to blame. And that's borne out by the record, of course, because the doctor took an X-ray of her arm. He wasn't able to determine whether she had a broken arm at the time because he was new, right? I mean, that's what he said. Sadly, yes. Amazingly, there was nobody on that ship that could read, was qualified to read an X-ray. So at that time, they didn't know whether her arm was broken or not. It could have been broken, but they had no way of knowing. They did not. But it was certain to them that it was a serious injury, because if it was obvious that the arm was not broken, the doctor would have said, what do we need an X-ray for? In other words, they couldn't rule out that it wasn't broken or that it was broken, right? Exactly. They couldn't rule out. And also, more importantly, is that they knew that the chair was to blame and the plaintiff was placing the blame squarely on the chair. And this is important because the magistrate's report sort of takes issue with the plaintiff's, I think he calls it short on details, the passenger injury statement. I'm confused about the timeline. I thought the steward, when he took the chair, he brought another chair and replaced it. And the chair was still maintained. And then we don't know when it was actually discarded. No, Your Honor. The record is that the steward took the chair away and it was never to be seen again. I know, but didn't he put another chair in there? I don't believe that there's any testimony about him replacing the chair in Mrs. Tesariero's cabin. I believe you're referring- That day or ever. You don't know. I thought there was testimony that he did, hours later, replace the chair. I think what Your Honor may be referring to is there was some testimony that, from the housekeeping manager, that the general policy is when there's a broken item, we remove and replace, which of course is reasonable and there's no quarrel with that. But when do we know the chair was actually destroyed? I thought that was like weeks later or something. I don't know when it is. What does the record tell us? That's the point. That very question was put to Carnival's corporate rep, Mrs. Petisco, and her response was, I asked and we don't know what happened to it. It was discarded. We don't know when. We don't know where it ended up. And that's the point there. They were clearly unnoticed that this is a serious injury. They anticipated litigation, and yet they destroyed the chair. What's the evidence that they anticipated litigation? Well, the admission in their response, in their request for admissions, as well as, again, Mrs. Petisco's, as the corporate representative, her testimony that yes, under these circumstances, when a passenger reports an injury, goes to the lengths of actually filling out a passenger injury report, yes, we reasonably anticipate litigation at that point. So I don't think that there can be any question about that. Can I ask you something? When you have a moment and you're sitting down, would you go back and take a look at page 61 of the report and recommendation? Let me know if you think that the magistrate judge there talked about how we would have to more, how we'd have to have a hearing to assess the credibility of witnesses to determine bad faith, et cetera, concerning the spoliation issue. I'll certainly do that, Your Honor. And I'll reserve the rest of my time for rebuttal. Thank you. Judges, good morning, and may it please the Court. My name is Cameron Eubanks, and I represent the Appellee Carnival Cruise Line in this case. Judge Rosenbaum, I didn't have a chance to look at the report and recommendation, but I think the issue you were mentioning was, I think the magistrate judge thought of it as an issue of timing. And he thought that, you know, instead of just having the spoliation issue just brought out in response to summary judgment, there should have been a more formal motion, there should have been a more formal, it should have been done either sooner, or there should have been something more discreet in that, instead of just in the response. Because he didn't think that, even assuming he said that, even assuming if you think there should be a sanction here, which he didn't think there should, he thought that the sanction should be either for causation or for damages. He did not think it should be noticed. So he certainly didn't think that there was an open issue. But let me ask you this. Let's just talk about that for a second. If there should have been a hearing on spoliation, and if it had been done correctly, just setting those two issues aside, why would it make sense that it would be for anything other than notice, when the whole question here goes to whether they would have had notice from the shape of the chair? I mean, whether they had reason to know. Why would it go to anything other than that? I mean, nobody was really seriously contesting anything else, and Race Ipsa would have taken care of the rest of it. Why would it go to anything other than notice? Or why wouldn't it go to notice is probably the better question. I think what the magistrate judge reasoned was that the spoliation issue wasn't just simply a to plug in any hole in the plaintiff's case. I agree. I agree. It has to go to the issue. But why would it be that looking at the chair to see whether anybody, whether a steward who was inspecting it should have been able to know that it was in this kind of condition, why would that not be what it would go to? Because that is the notice question. For sure. That is one of the notice issues. I think that the magistrate judge is thinking that's probably speculation, and this is kind of one of the issues that came up in the Sutton case. As the plaintiffs have said, if we had the chair, we would have had an expert, and the expert would have been able to test the chair and prove notice. And this is what happened in Sutton. The plaintiffs, the disco ball mirror falls on the passenger's head, and the expert says, well, I think that the bolts have slowly, undetectably loosened over time. And this court still, from the summary judgment, found that that was pure speculation. So I think that's going into what the magistrate was finding, is that he's, I don't see how having the chair is going to prove notice. It would prove something else. So that was what he thought, he thought this foliation sanction would be more rationally related to something other than notice, and it wasn't just the catch-all fix to put any hole in their case. And a little more points on this foliation. We have kind of a disconnect. We have, in reality, did Carnival anticipate litigation based on what happened? No. The policy of the corporation is, if a passenger goes to the clinic and they need something beyond first aid, there's litigations anticipated in those situations because the injuries are more serious. And then at that point, it triggers an investigation with security, and then it goes to maintenance, and then it goes to the housekeeping stewards down the chain in that way. And what happened here, and you could certainly quibble with the doctor's decision, was he a bit aggressive, saying that she needed only first aid or less? Maybe so. Especially when he himself said he couldn't read an x-ray. For sure. So was the doctor a little ahead of himself? Possibly. But again, he thought it was first aid, and that's the decision. You know, the security department, they're not doctors, and certainly not the housekeepers. And so once he makes the decision... Is that a reasonable retention policy? I mean, is it reasonable to... I mean, this woman has had more than $120,000 worth of damages as far as, you know, 40 physical therapies, three surgeries at this point, all kinds of other difficulties that she has. She still can't really use her arm. I mean, is it a reasonable retention policy? Or could it be, at least arguably, a question, a material issue of fact as to whether it might be an issue of bad faith? To have a retention policy that is based on a doctor who apparently hasn't been trained in this area, his decision about whether or not the chair should be retained? I mean, is that a reasonable retention policy? Well, I think that it is, Your Honor. And the vast majority of these cases, of course, you're going to hear from Carnival three times this week. Carnival has thousands of claims. They have hundreds of cases that go into litigation. And the... None of them have the same kind of times where these kind of issues come up are rare. So again, should the doctor have made a different decision? Maybe. But again, does that rise to the level of bad faith on Carnival's part? Certainly not. Because again, if you look at the cases from this court, Bashir and Vick and Flurry, this is... The chair is disposed of on the ship. We don't know exactly when, but it appears pretty much right after the fact. But let me ask you this. If the people at Carnival who have to make determinations about whether litigation is anticipated know that litigation is anticipated immediately upon the reporting of the incident, if they know that, right, and they have admitted such in this case, because that's on the record and we have two different instances of admission here, then why would that not be conveyed as part of the retention policy, right? I mean, any time that there is an injury, because my understanding of it is that the treatment was sought beyond sort of cuts and bruises, treatment was sought with a doctor, why is that... I mean, doesn't there... I guess my question goes to, doesn't there come some point in time or someplace in the spectrum where a retention policy cannot be relied upon because it cannot be in good faith if it is in conflict with what sort of the higher-ups, I guess, at Carnival know and anticipate about litigation? And maybe it is not this case. I'm not saying it is or it isn't. I'm just saying, isn't there a point where there has to be... Doesn't there have to be some kind of connection between what the higher-ups know about when litigation is anticipated and what the retention policy is? And here, it seems like there's a total disconnect, and I don't understand that. Judge, I think that they actually do me, because what the company's experience is, is typically when you have something first aid or beyond is when litigation is anticipated. The doctor here didn't think this was something that serious, and it's only later that she's had this cascade of problems that the doctor certainly did not anticipate at the time. So this is not a case where on the ship somebody said, you know what, this is one that's definitely going to... She's going to have to have all these surgeries and this cascading of problems later on. So I think that the retention policy does meet up with what's going on on the ship. If the doctor had found that she had a broken arm, would Carnival's retention policy have demanded that the chair be retained? I think if she had an actual broken arm diagnosed, then yes. There would have been an investigation. The more formal investigation, accident reporting would have been triggered in this case, and the chair would have been preserved, or more likely have been preserved. So yes, if she did have a broken arm, I would say that yes. So when did they find out that she did not have a broken arm? Because the x-rays had to be sent to Miami before anybody knew that. As far as on the ship, they didn't know. It wasn't conclusively ruled out on the ship. So isn't that a problem then, that the chair wasn't preserved when they couldn't rule out that her arm was broken? Again, I think that the doctor's decision may have not been reasonable. But again, you've got to get to this level of bad faith, and it just doesn't meet that. What you have is maybe a poor decision by a shipboard doctor. Maybe the departments are not on the same page. It isn't rising to the level of tampering with evidence, a consciousness of a case. The other things that this court has talked about over and over again on the spoliation cases, it just doesn't rise to the level of that. Honestly, it should have been preserved, maybe, but it's more negligence. Anything isn't getting to that higher standard of misconduct for the spoliation that this court's talked about over and over. And you might be right, but see, here's my problem. If it's, I mean, why isn't this a credibility issue, right? I mean, why do we not need to hear from the doctor and or somebody from Carnival before we can determine whether or not this was just a negligence issue or whether, in fact, there was something more going on here, something of bad faith? Judge, I think that the burden's certainly on the plaintiff. They could have deposed the doctor. They never did. They could have deposed the security people. They never did. And so then you have Carnival having to rebut this specter of bad faith that they're intentionally destroying evidence and there just isn't any evidence of that. So I think that that would shift the burden on us. Except for the sort of suspicious circumstances that it's not preserved and he doesn't know that her arm isn't broken and the higher-ups all think that litigation was anticipated immediately. I mean, don't those circumstances in and of themselves sort of create some kind of credibility question? I don't think so, Judge. No, I think that based on what happened here, you can find that there's no bad faith, as the magistrate judge did. Has anyone ever suggested that the doctor had bad faith, that he perhaps really knew that the arm was broken? Negligence, I think, is a different question, whether the doctor should have known. But did anyone suggest that he knew that it was broken? I mean, with evidence, no. I mean, I think that's the implication that the plaintiffs have tried to make in the case, but I don't think there's any record evidence to that effect. And did Carnival send the x-rays to the second facility for review or did the plaintiffs send the x-rays? Standing here, Judge, I do not know that, unfortunately. And turning to some of the other issues, the notice issue, Judge, you brought this up and this was the question that was left open. And Sutton is whether Ray Zipzer can simply get around notice altogether. And you cited the classic cases, Keefe and Everett. And the cruise line's notice requirement is, it's almost absolute in these personal injury negligence cases. We saw this just a few years ago in the Pizzino decision, that even if the cruise line creates the dangerous condition or creates the risk-creating condition, you still have to establish notice. This was a case where the crew member is walking down the hallway and he has a bucket of water and he allegedly spills it. And the issue is, do they have to prove notice in that case or is notice obviated because he's created it? And so based on Pizzino and Keefe and Everett, and going to the point that you mentioned, that the notice really triggers the duty. Once they know that there's a problem, that's when you have a duty to act. And so based on Keefe and Everett and Pizzino, Ray Zipzer Locator cannot be used, I don't think, to get around the notice requirement. And touching on Ray Zipzer Locator, the issue is really the third factor, whether this is a mishap, it's a type ordinary, does not occur in the absence of negligence. And the magistrate judge has quite a bit of analysis on this and he broke the Ray Zipzer Locator cases down into three big tranches. And there's the first one that says the defendant causes the injury and it's whether they're negligent or not. It says these are the easiest and these are the Supreme Court's Johnson case when the falling block falls on the crew member's head, or the Manhattan by Sail case where the loose halyard line strikes the passenger, or this court's Bacon decision where the dredge sinks in clear daylight. And the second category is the plaintiff is injured by negligence, but it's an open question who did it. And I would probably say that the falling flower barrel is probably the classic example of that one. And that's a little more difficult. And then you have the third one, which is it's an open question whether it's negligence, something innocuous, or whether it's a third party who has caused the plaintiff's injury. It says these are the hardest ones to draw the inference of Ray Zipzer Locator. And because the inference of negligence in the case is extremely weak. So it's on the plaintiff to rule out any other equally plausible explanations for what could have occurred. And this court's recent Sutton decision went through this quite a bit, that the expert had said that, well, maybe the screws had undetectably loosened over time. They said, well, that means maybe you have a design defect or a manufacturing defect or just wear and tear. And that's kind of what you have in this case. Carnival inspects the chairs. They're pulling them out. They're touching them. They're not really detecting any problems with this chair or these chairs. But they're doing it in part for the purpose of making sure that the chairs are safe, right? Yes. I mean, the chairs are inspected to make sure they're safe. Okay. But I just want to make sure I understand the evidence. They're not just pulling them out so they can vacuum, right? I mean, they're pulling them out also so they can check and make sure that they're safe. Or am I not understanding the record? That's correct, Judge. Okay. So that's a little different from a passenger who pulls it out to sit in it. Would you agree? No. I think that they're essentially the same. And to say that... Well, does a passenger look to see whether it's safe before sitting in it? I mean, is that a normal thing that you would think a passenger would do? Inspect the chair before sitting down? No, no. I don't think you need to inspect the chair. But I think it would be common if you pulled a chair out and it was loose or something, you wouldn't sit in it. I mean, you're not doing it to people. Sure. If you noticed that it was loose, but you wouldn't be looking for it, right? No, I don't think people sit down looking. Okay. But a steward inspecting would be looking for that kind of a thing, right? Yes, I would agree. Okay. Thank you. But the other point I would add on that is the plaintiff's husband affidavit, he testified that it looked like a fine chair. There was nothing observable until it just popped apart. But is there any indication that he inspected the chair? No, I don't think he testified he was inspecting the chair. I'm almost out of time. If there's no more questions, I would ask this court to respectfully affirm. Thank you. Thank you, counsel. I have a few record questions if we could before you start the clock. The exemplar chair, did they give you an exemplar chair that was like this chair? There was an offer for an exemplar chair, and as we've noted in our brief, I mean... Okay, so you didn't test the exemplar chair. No, because it's not a design defect claim. I understand. I'm just trying to do... And the pictures of the chair do show what you can contend was the defect in the leg. The pictures do show that. It shows that... I mean, they're in the record, so it's my characterization. It shows that the pegs had come loose rather than breaking or splintering. And I looked at the pictures. It didn't look like the leg broke into it. It looked like it just came out of the holes. Exactly. Is that right? Okay. And then I just went back in your motion for summary judgment. Did you ask for an evidence you're hearing on spoliation? I can't answer that with certainty. Did you do anything about spoliation? Because you knew you didn't have the chair before they moved for summary judgment other than in your reply brief, you did address it. No. There was actually... And thank you for bringing that up. Not only did we mention spoliation in opposition to Carnival's motion for summary judgment, but the plaintiff also affirmatively filed a motion for partial summary judgment based on spoliation as well as exemption. Because spoliation is a sanction. It is proper to raise it in summary judgment, but it's basically a sanction. And you move for evidence you're hearing. I'm not saying you've waived it or learned the landscape here. I'm just future. If you make a motion for evidence you're hearing, here it is, it's not here, you might get some evidence on that. I'll be honest. I don't know whether it was asked for or not. It'd be in the record, of course. Okay. Have you been the lawyer throughout? No, Your Honor. I'm handling the appeal, but I was on trial counsel. All right. Thank you. I'll check. They need to check it. And I'm sorry. Thank you for answering my questions. Well, assuming, which we can certainly confirm, but assuming that there was no evidentiary hearing sought, is it your argument that on purely the facts that we have before us, we could and should find spoliation? Absolutely. And if we think that perhaps an evidentiary hearing would have shown different facts that would mandate in favor and spoliation, that does not mean that we could find spoliation, correct? Since we have to make our judgment on the facts that are before us in the record, right? Correct. So you could either reverse after concluding independently, as this court can, that there was spoliation based on the evidence, or you could remand for further proceedings with instructions that there be an evidentiary hearing with regard to the spoliation issue. Could we do that even if assuming no evidentiary hearing was sought at the trial level? Well, I think you could because, frankly, and this gets to Judge Rosenbaum's question, parting question, this sort of came out of left field. At the very end, there is this, I stand corrected, the trial judge did say that spoliation sanctions are typically appropriate as factual matters determined in the context of trial, and essentially said that there may be a question here, and essentially it denied without prejudice, it looks like, the plaintiff's motion for spoliation sanctions. But I don't think that there's anything prohibiting this court from saying there isn't, because remember, this did come up in a summary judgment context. There is an issue of fact that's been raised by the evidence that is already before the court. There's nothing preventing this court to go back and do what they often do in summary judgment cases. In fact, I handled one of these where I got a reversal from this court, and it said, well, we're going to remand for, to allow the district court to consider additional issues that we're not reaching here. So it reversed the summary judgment in favor of the cruise line defendant, but remanded for further proceedings. And I don't see any reason why the court couldn't do that here. If I talk very briefly about the design defect and the wear and tear that's been raised in context of the race IPSA argument, counsel is suggesting that, well, yes, there's plenty of evidence in the record that this was wear and tear, that this was a design defect. But in fact, there is no evidence. And this ties right into the spoliation issue. The reason we can't determine whether or not the chair fell apart as a result of wear and tear or a design defect is because they threw away the chair. You just said, I'm sorry to interrupt, but you just said a minute ago that you didn't accept an exemplar chair because it wasn't a design defect case. I don't know that you can have it both ways. No, absolutely not. And we're not trying to, let me clarify. What we're saying is because this is a negligence case, because notice is an issue, one way in which you can prove notice is to show that the dangerous condition existed for a sufficient period of time to it have been detected. What we've argued is that if we had this chair, then we could have subjected the chair to some testing and I'm not a chair expert or anything like that. But certainly there are experts that could run tests and determine that, well, no, this was just a sudden thing that happened and there was no way anybody could have of the glue, the condition of the pegs, that this chair was loose for weeks, months, whatever. But that's the point I'm trying to make here, that this is, that that would have been critical to our ability to show notice. Thank you, counsel. Thank you very much. We'll be in recess until tomorrow.